BURGESS *v.* HUMPHREY BOOKCASE CO.

1. MASTER AND SERVANT — DUTY OF MASTER — SAFE PLACE TO
   WORK—QUESTION FOR JURY.
   The duty of furnishing adequate steam capacity to make the
   operation of machinery reasonably safe rests upon the mas-
   ter, and is within the rule that makes it his duty to furnish
   reasonably safe machinery; and, under the evidence, whether
   he did or not, was a question for the jury.

2. SAME—PERSONAL INJURIES — ASSUMPTION OF RISK — CONTRIBU-
   TORY NEGLIGENCE—QUESTION FOR JURY.
   Where, in an action for personal injuries, there was testimony
   that plaintiff, on different occasions prior to the time of the
   injury complained of, knew of the danger of operating the
   machine because of a lack of power and not from any defect
   in the machine itself, and on the day of the accident had been
   assured by defendant's foreman that there was then sufficient
   power to operate the machine safely, *held,* that the questions
   of whether he assumed the risk and was guilty of contribu-
   tory negligence were for the jury.

3. SAME.
   In such action, whether or not said foreman was a vice prin-
   cipal is not considered; since if plaintiff did not assume the
   risk, it was because, from information received from what-
   ever source, he honestly believed, and had just reason to be-
   lieve, that the capacity of the boiler was adequate, and that
   there would be no repetition of such fault.

4. APPEAL AND ERROR—INSTRUCTIONS.
   Error cannot be predicated on a confusion in the instructions
   to the jury in regard to the defenses to an action for personal
   injuries, where both defenses were based upon the same
   alleged facts, and if one was found to exist the other would
   of necessity follow.

5. SAME.
   An instruction that if the jury should find from the evidence
   that the plaintiff complained of the defective condition and
   working of said machine, and that assurances were made to
   him that it would be so altered that the defect complained of
   would cease to exist, that plaintiff had a right to continue to
   work at such machine for a reasonable time without assum-
   ing the risk of injury, was erroneous, since there was no
   proof that the foreman was a vice principal and could there-
   fore bind the master by a promise to increase the capacity of
   the boiler which was the defect complained of—such promise,
   if made, being that of a fellow-servant.

Error to Wayne; Mandell, J. Submitted January 7,
1909. (Docket No. 42.) Decided April 24, 1909.

Case by Clarence Burgess, by next friend, against the
Humphrey Bookcase Company for personal injuries.
There was judgment for plaintiff, and defendant brings
error. Reversed.

*George F. Monaghan* and *Peter J. Monaghan,* for
appellant.

*Clarence P. Milligan* and *Washington I. Robinson,*
for appellee.

HOOKER, J. The plaintiff was injured on the defend-
ant's planer, which was admittedly in good condition and
running order. His hand was drawn upon the knives

and cut, and the cause was the failure of proper velocity in the machine.   He recovered a substantial judgment in an action for negligent injury, and defendant has appealed.

There is but one explanation of the accident, and that must have been apparent to the plaintiff, or anyone else, viz., that there was a want of steady, adequate power at the machine to give the necessary velocity to make the revolving knives cut.   The result was they stuck in the wood and the plaintiff was hurt.   The plaintiff claims that this was due to a want of pressure from the boiler, and the testimony tends to show that the fault was first noticed about the time that the steam pressure was kept down to 40 pounds by direction of the boiler inspector, which was three or four days before the accident.   It had previously been as high as 70 pounds.   On the other hand, the defendant produced testimony tending to show that, when the pressure was reduced, it directed that the load be reduced in proportion by stopping about half of the machinery, and therefore the unsteadiness was not due to the change in pressure.   The want of power at the planer was manifestly due to a want of power at the boiler, for it could not well be due to any other cause; the planer being in good running order.   This may be accounted for upon the ground that at 40 pounds pressure the boiler did not furnish sufficient steam to run the machines which defendant directed to be run, or was caused by the negligence of the firemen in firing, or the disobedience of men in running more machines than directed by defendant. All of these are ways in which the slowing down may be explained.   If the lack of capacity in the boiler was the cause, the fault was the defendant's; if disobedience of others, it was the fault of plaintiff's fellow-servants, though no such claim is made in the case, and we need not discuss it.

Plaintiff has rested his case on the claim that there was insufficient boiler capacity, at 40 pounds pressure, to run this planer safely with such other machinery as was kept

running by defendant, and we are of the opinion that there was evidence from which this might be inferred. We cannot say that the testimony conclusively shows that a proportionate amount of machinery was put out of use when the steam was reduced, nor can we say that enough was taken off to leave the power at the planer un-diminished if all was discontinued that defendant claims. Moreover, we are not justified in assuming, though the jury might have been in finding, that there was adequate power before the pressure was reduced. The duty of furnishing adequate steam capacity to make the operation of machinery reasonably safe rests upon the master, and is within the rule that makes it his duty to furnish reasonably safe machinery, and whether he did or not was a proper question for the jury.

Plaintiff's right of recovery was contested on two other grounds, besides the want of negligence upon the part of defendant:

(1) That the plaintiff knew of the erratic running of the machine, and chose to use it notwithstanding, and therefore assumed the risk.

(2) He was guilty of contributory negligence in using the machine.

We will discuss these together. The plaintiff was fully conscious of the danger of erratic motion, and he must have known that it was due to want of power at the machine. If it was negligence on the part of a master to have a machine run under such circumstances, it was also negligent for one to run it, with a knowledge of such danger, and he would be guilty of contributory negligence if he did so, and could not recover. There are doubtless few who have not seen the machinery in a water mill slow down and start up from a varying load. The same thing can be seen when steam power is used, unless the engine is under a governor to keep it steady, and, even where it is, if the load is in excess of the power plant. We understand that a governor was used on defendant's engine, but the contention of plaintiff's counsel

is that the power plant was inadequate to the maximum load. We have often said that a manufacturer is not required to discard expensive machinery because not up to date. He is at liberty to use it if he can find persons willing to operate it, and in this case, if this plaintiff knew that there was inadequate power and danger therefrom, whatever the cause, he assumed the risk when he used it. Defendant's counsel insisted that his own testimony shows that he did use it with such knowledge, and allege error on the failure of the trial judge to direct a verdict. His testimony does show that he knew on the 10th that the machine slowed down for want of power, and he stopped using it. He did the same on the 12th. Again on the 13th he found this to be true. There is testimony from which a jury might conclude that he continued to work after such discovery on the 13th, when, if he had stopped, he would not have been hurt, or they might infer that the discovery and the injury were the same instant. Therefore this last question was clearly one for the jury. It is clear, however, that he knew it before that day, and that was notice enough to him, unless he had a right to suppose that the difficulty had been corrected. He knew the machine was all right. The foreman assured him that the machine would be all right, i. e., that it would run steadily. Was not this enough to justify a belief that sufficient power was being furnished? Of course, if he knew of the lack of boiler capacity, no amount of such assurance would excuse him from the assumption of the risk. These were questions for the jury.

In saying this, we eliminate all questions relating to the subject of vice principal. Ordinarily a foreman of a shop is not a vice principal, as we have often said, and there is nothing in this case to indicate that he was charged with the performance of any of the duties of a vice principal. Counsel for the plaintiff make the point that he promised to repair the machine, and said it had been repaired, etc., and apparently claim that this justified plaintiff in going to work, and relieved him from the assumption of risk.

We think otherwise. If he did not assume this risk, it was because, from information obtained from whatever source, he honestly believed, and had just reason to believe, that the capacity of the boiler was adequate, and that there would be no repetition of the fault. These things were also for the jury.

: In this connection we allude to a question raised upon the charge of the court. Counsel say that the judge confused the jury by commingling his instructions as to assumption of risk and contributory negligence. We have examined this question. Both defenses depend upon the same facts, viz., that plaintiff went to work with the planer in the face of known danger from want of power. If he deliberately chose to do this, it was an assumption of the risk, and, if it was not in that case also contributory negligence, it is difficult to see how defendant was injured by its being called such. If there was any contributory negligence, it consisted in plaintiff's using the planer with knowledge. This was also an assumption of risk. No injury was suffered from this charge, and in saying this we do not intend to imply any impropriety in the instructions.

The court left the plaintiff's claim to rest on one point, i. e., that he was not provided with a reasonably safe machine, and there is no indication that he excluded any of the defendant's defenses. We are constrained to say that the court did err in giving the following request to charge:

" I charge you, if you believe from the evidence in this case that the plaintiff complained of the defective condition and working of this machine—that is, the machine in question—on which he was injured, and that assurances were made to him that the machine would be so altered that the defect complained of would cease to exist, then the plaintiff had a right to continue to work at the machine a reasonable time after such assurances, without assuming the risk of injury."

This is so because there is no proof that the foreman

was the vice principal.   Had the machine been defective, and had it appeared that the foreman was charged with the duty of inspecting and repairing it, he might have charged the master by a promise to repair, and a representation that he had repaired; but the defect was a want of boiler capacity.  The foreman may have had the duty as fellow-servant of getting the power from the boiler if it could be done; but there is nothing to show that he had authority to get a new boiler, or to promise to do so, or that plaintiff either supposed or was told that he could or would.   A promise to have sufficient power was merely the promise of a fellow-servant, and a failure to keep the promise was a fellow-servant's neglect.   *Shackelton* v. *Railroad Co.*, 107 Mich. 16.

The judgment is reversed, and a new trial ordered.

BLAIR, C. J., and GRANT, MOORE, and MCALVAY, JJ., concurred.